IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                           Cr. No. 21-1721 KG

RANDAL WAYNE MELTON,

     Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

     Defendant Randal Wayne Melton filed a Motion to Suppress on March 28, 2022 (Motion). (Doc. 41). The Motion is fully and timely briefed. (Docs. 48, 49). The Court held an in-person evidentiary hearing on the matter on April 14, 2022, at which the Government presented and Defendant cross-examined witnesses, the parties submitted exhibits, and the Court entertained oral argument. Having considered the evidence, the briefing, argument of counsel, and the applicable law, and for the reasons explained herein, the Court grants the Motion.

I.    *Standard of Review*

     The movant bears the initial burden to show a violation of a constitutional right warranting suppression, and the burden then shifts to the Government to show its conduct was reasonable or that consent was validly given. *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020); *United States v. Shrum*, 908 F.3d 1219, 1229 (10th Cir. 2018). Regardless of which party bears the burden, the showing must be a by a preponderance of the evidence. *Goebel*, 959 F.3d at 1265; *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) (announcing burden of proof by a preponderance).

When evaluating the evidence on a motion to suppress, "the district court must assess the credibility of witnesses and determine the weight to give the evidence presented." *Goebel*, 959 F.3d at 1265; *see also United States v. Cortez*, 965 F.3d 827, 833 n.4 (10th Cir. 2020) (quoting same); *United States v. Torres*, 987 F.3d 893, 899 (10th Cir. 2021) (explaining district court "evenhandedly" considers evidence). Any inferences the Court "draws from that evidence and testimony are entirely within its discretion." *Goebel*, 959 F.3d at 1265.

II.    *Factual Findings*

Tyson Terrell (Terrell), who is not a defendant in this case, had a warrant out for his arrest on June 2, 2019, following the carjacking and death of J.S. on May 28, 2019. Transcript of April 14, 2022, Hearing on Motion to Suppress (Tr.) at 94:1-3; 104:12-20.[1]

Lieutenant Joshua Baker (Lt. Baker), with the Sierra County Sheriff's Office (SCSO), testified that Curtis Cherry (Mr. Cherry) called another SCSO member on June 2, 2019, to inform law enforcement that Terrell had called Mr. Cherry's wife (Terrell's mother) and told her that he, Terrell, was on his way to Truth or Consequences, New Mexico, and was approximately an hour out of town. Tr. at 16:10-17. The call between Mr. Cherry and SCSO occurred at or around 9:15 p.m. Tr. at 16:17. The record does not reflect when Terrell first contacted the Cherry family.

The original SCSO member contacted Lt. Baker approximately an hour later, at 10:10 p.m., and advised Lt. Baker that Terrell "was wanted in connection to a homicide outside of Eddy County[, New Mexico]." Tr. at 16:19-22. Lt. Baker also learned that Terrell and his companion "were considered armed and dangerous." Tr. at 18:24-19:1. Lt. Baker then called

---

[1] The Court's citation to the hearing transcript refers to the court reporter's original, unedited version. Any final transcript may contain some differences in page and line numbers.

Mr. Cherry. Tr. at 17:8-9. Mr. Cherry informed Lt. Baker that he had re-dialed the number from which Terrell called his mother, an unidentified male answered the phone, and the unidentified male passed the phone to Terrell. Tr. at 17:9-15. Mr. Cherry also told Lt. Baker that Terrell and another individual were wanted with respect to the homicide. *Id.* Mr. Cherry told Lt. Baker that he was worried the unidentified male "was the other gentleman wanted in connection for the same crime." Tr. at 17:15-17. This fear made Mr. Cherry afraid to go home at 10:10 p.m. because "they could already be at his house" and he "didn't know what to do." Tr. at 18:5-8. Mr. Cherry was afraid to go home because he "worked as an animal control officer for Truth or Consequences, and the uniform he wore resembled a law enforcement uniform. He was afraid the other individual might view him as law enforcement and it might cause a problem." Tr. at 18:10-14. Lt. Baker testified that "Mr. Cherry didn't seem to be too concerned with Mr. Terrell. He was more worried about who the unknown subject that was possibly with him was." Tr. at 38:10-12.

Based on this information, Lt. Baker obtained the phone number from which Terrell had called his mother, provided that number to dispatchers, and "asked them to request an emergency phone ping on the phone." Tr. at 18:17-19. By logical inference, the officers could locate Terrell if they located the phone.

Toward that end, dispatchers filled out the Emergency Situation Disclosure form for Verizon wireless[2], which is time-stamped "June 3, 2019, 1:07:05 AM EDT." (Doc. 48-3); Tr. at

---

[2] Verizon was Defendant's cell carrier. It is unclear how or when law enforcement identified Verizon as the cell carrier.

19:14-23.[3]  They also filled out the Emergency Situation Periodic Location Updates form for

Verizon, which is time-stamped "03 June 2019 01:05:35 AM EDT." (Doc. 48-4).

For both documents, law enforcement checked "yes" in response to "Does this request

relate to an emergency involving danger of death or serious physical injury to a person,

necessitating disclosure without delay of information relating to that emergency?" (Doc. 48-4);

*see also* (Doc. 48-3) (using similar language).  With respect to the Periodic Location Updates

form, that form states: "Location updates will be provided at 15 minutes intervals, but only

during the emergency situation.  You must notify Verizon when the situation is no longer

emergent." (Doc. 48-4).  Finally, the requesting officer must certify their understanding that they

"must notify Verizon Wireless to stop sending location updates when the situation is no longer

emergent." *Id.*

The officers received the first location ping from Verizon around midnight, Tr. at 141:10-

24, locating the phone in Carrizozo, New Mexico, in Lincoln County.  Tr. at 22:19-20.  Carrizozo

is at least an 80 to 90 minute drive from Truth or Consequences, Tr. at 43:1-10.[4][5]  The location is

approximately two hours from Truth or Consequences.  Even though the phone appeared farther

away from Truth or Consequences than the one-hour or less distance as earlier reported, Lt. Baker

testified that he "believed the vehicle could have turned around and come back to Truth or

Consequences or done any other number of things." Tr. at 27:24-28:1.  Specifically, Lt. Baker

---

[3] Eastern time is two hours ahead of Mountain time, meaning this time-stamp reflects 11:07 PM
on June 2, 2019—another hour after Lt. Baker became involved in the case.

[4] Google Maps places this drive closer to two (2) hours in length.

[5] The Court takes judicial notice of the recommended fastest route and approximate travel time
between two cities or towns, as shown by Google Maps.  These are adjudicative facts, "not
subject to reasonable dispute, that [are] 'generally known within the trial court's territorial
jurisdiction' [and/or] that can be 'accurately and readily determined from sources whose
accuracy cannot reasonably be questioned.'" *United States v. Murray*, --- F.4th ---, 2022 WL
1146360, at *13 (10th Cir. Apr. 19, 2022) (quoting Fed. R. Evid. 201(b)).

"was concerned that if [Terrell and his companion] got inside the [Cherry] house, we would wind

up with a standoff or a hostage situation or a violent encounter between law enforcement and the

subjects, and [he] didn't want that in a populated area." Tr. at 28:6-10.



The next ping showed the phone moving south from Carrizozo, New Mexico, towards

Tularosa, New Mexico.  Tr. at 23:20-21.  Tularosa is further distant from Truth or Consequences

than Carrizozo.



Just north of Alamogordo, New Mexico, the phone was located eastbound on Highway 82. Tr. at 24:18-20. At that time, Lt. Baker "believed that they were probably traveling back to Eddy County because that's where they were from . . . ." Tr. at 25:18-20. Lt. Baker testified that he, personally, believed the phone was traveling back to Eddy County, meaning that Terrell and his companion were not going to the Cherry house.

The pings continued locating the phone east through Cloudcroft, toward Mayhill, and then toward Hope, New Mexico, on Highway 82. Tr. at 26:20-22.



Indeed, from the distance between the turn east onto Highway 82 to Hope, New Mexico is approximately 86 miles, a roughly 90-minute drive.[6]



---

[6] The Court heard additional testimony at the hearing.  However, because the Court's analysis turns on the CSLI tracking, the Court does not further recount testimony irrelevant to resolution of this Motion.  The Court nevertheless finds the government's witnesses credible.

III.    *Analysis*

Defendant's argument proceeds in two parts, which the Court addresses in chronological order: first, Defendant challenges the Government's access of his cell site location information (CLSI) or GPS information as a warrantless search not subject to any recognized exception, and thus a violation of his Fourth Amendment right to be free from unreasonable searches; and second, Defendant challenges the duration of the vehicle stop that resulted in his arrest, again as a violation of his Fourth Amendment right to be free from unreasonable seizures.

Defendant's Motion raises myriad complex constitutional questions.  While the Court finds that a reasonable officer could believe an exigent circumstance existed to justify the warrantless tracking of Defendant's CSLI.  However, the exigency ended when the phone's location was found eastbound on Highway 82.  Absent continued tracking, officers could not have found Defendant's vehicle, and thus would not have arrested him.  The Court considers all evidence discovered after the phone turned east as fruit of the poisonous tree.  For these reasons, the Court grants Defendant's Motion to Suppress.

   A.  *Cell Site Location Information*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The "basic purpose of this Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."  *Camara v. Mun. Court of City and Cnty. of San Francisco*, 387 U.S. 523, 528 (1967).

"[A]n individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through" CSLI.  *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018).  While *Carpenter* expressly did not address real-time CSLI, that Court

acknowledged that "when the Government tracks the location of a cell phone it achieves near

perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 2218,

2220.  "[T]he Government must generally obtain a warrant supported by probable cause before

acquiring such records." *Id.* at 2221.  "Although the 'ultimate measure of the constitutionality of

a governmental search is "reasonableness,"'" *id.* (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515

U.S. 646, 652 (1995)), "[i]n the absence of a warrant, a search is reasonable only if it falls within

a specific exception to the warrant requirement," *id.* (quoting *Riley v. California*, 573 U.S. 373, -

--, 134 S. Ct. 2473, 2482 (2014)).

The threshold question here is whether the Government's acquisition of Defendant's real-

time CSLI constitutes a "search" within the meaning of the Fourth Amendment.[7]  The Court

concludes that it does.  Defendant had a reasonable expectation of privacy in his real-time CSLI.

While the *Carpenter* Court did not explicitly address real-time CSLI collection, it tacitly

recognized a cognizable privacy interest in the same information when it acknowledged that

"case-specific exceptions may support a warrantless search of an individual's cell-site records

under certain circumstances," and noted that "if law enforcement is confronted with an urgent

situation, such fact-specific threats will likely justify the warrantless collection of CSLI." *Id.* at

2222, 2223.  Moreover, the Government in this case did not employ traditional surveillance

techniques that would allow identification of Defendant (or Terrell's) location without recourse

to Defendant's CSLI.  For these reasons, the Court concludes Defendant had a reasonable

---

[7] The Government did not squarely argue that Defendant lacked a reasonable expectation of
privacy in his real-time CSLI or that obtaining that information from Verizon did not constitute a
search.  However, the Government argued at the Hearing that *Carpenter* did not apply.  Tr. At
136:10-137:3.  The Court addresses this point out of an abundance of caution.

expectation of privacy in his real-time CSLI and the Government's acquisition of that information constitutes a search within the meaning of the Fourth Amendment.

Having concluded that Defendant had a reasonable expectation of privacy in his real-time CSLI and that acquisition of the same constituted a search, the Court turns to the strictures of the Fourth Amendment. The parties agree the Government did not obtain a warrant for Defendant's CSLI. The operative question, then, becomes whether any exception to the warrant requirement applies to constitutionally validate the search.

The Government offers three separate theories to uphold the search. First, the Government argues the Stored Communications Act, 18 U.S.C. § 2702, expressly authorizes this type of search without a warrant. Second, the Government asserts the exigent circumstances exception applies given Lt. Baker's belief that Defendant and Terrell could have turned around at any time and headed toward Truth or Consequences. Additionally, the Government urges the good faith exception applies, rendering suppression an inappropriate remedy. For the reasons explained below, the Court concludes the search ultimately violated Defendant's Fourth Amendment right to be free from unreasonable searches, and all evidence flowing from that search is suppressed.

i.   *Stored Communications Act*

The Stored Communications Act (SCA), 18 U.S.C. § 2701 *et seq.*, addresses voluntary and compelled disclosure of stored wire and electronic communications and associated records held by third-party providers, including internet service providers and cellular communications providers. Generally, the SCA prohibits disclosure of the contents of any electronically stored communications without a court order, and may divulge "a record or other information pertaining to a subscriber to a customer of such service (not including the contents of

communications . . . )" to a limited subset of persons for specified reasons. *See generally* 18

U.S.C. §§ 2702(c), 2703(d).  For purposes of this Motion, the SCA contains two distinct

provisions: § 2703 governs *compelled* or *required* disclosure of those records by the service

provider; and § 2702 governs *voluntary* disclosure of customer communications or records by

the service provider.

Section 2703(c) provides that the Government can compel "a provider of electronic

communication service or remote computing service to disclose a record or other information

pertaining to a subscriber to or customer of such service (not including the contents of

communications" under specifically enumerated circumstances.[8]  These circumstances include

when the Government: obtains a warrant, obtains a court order pursuant to 18 U.S.C. § 2703(d),

has the consent of the subscriber or customer, submits a formal written request relevant to a law

enforcement investigation regarding telemarketing fraud, or if the Government uses various

types of authorized subpoenas for subscriber information including call records and means of

payment. *Id.*  To obtain a court order, the Government must "offer[] specific and articulable

facts showing that there are reasonable grounds to believe that the contents of a wire or

electronic communication, or the records or other information sought, are relevant to an ongoing

criminal investigation." 18 U.S.C. § 2703(d).

The Government can also seek voluntary disclosure of customer records. 18 U.S.C. §

2702.  Section 2702 provides that an electronic communication service provider <u>may</u> "divulge a

record or other information pertaining to a subscriber to or customer of such service (not

---

[8] Section 2703(a) provides that the Government can compel disclosure of the contents of a wire or electronic communication pursuant to a warrant.

including the contents of communications . . ." under specifically enumerated circumstances.[9]

18 U.S.C. § 2702(c). Those circumstances include:

> (1) as otherwise authorized in section 2703;
> (2) with the lawful consent of the customer or subscriber;
> (3) as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service;
> (4) to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency;
> (5) to the National Center for Missing and Exploited Children, in connection with a report submitted thereto under section 2258A;
> (6) to any person other than governmental entity; or
> (7) to a foreign government pursuant to an order from a foreign government that is subject to an executive agreement that the Attorney General has determined and certified to Congress satisfies section 2523.

*Id.*

As an initial matter, courts that have considered the issue agree that historical or prospective CSLI constitutes "other information" within the meaning of § 2702(c)(4). *United States v. Gilliam*, 842 F.3d 801, 803 (2d Cir. 2016); *see also United States v. Graham*, 846 F. Supp. 2d 384, 396 (D. Md. 2012) (discussing related §2703, involving mandatory disclosures pursuant to a warrant); *In re Application of the United States for an Order Authorizing the Release of Historical Cell-Site Info.*, 809 F. Supp. 2d 113, 125 (E.D.N.Y. 2011) (same).

Based on this statutory framework, the Government argues that the existence of an "emergency" within the meaning of the statute—regardless of who made that determination—provides constitutional authority for a warrantless search of prospective CSLI. The Court is not persuaded.

---

[9] Section 2702(b) provides for voluntary disclosure of the contents of communications under certain circumstances. This case does not involve disclosure of the contents of communications.

Section 2702(c)(4), the provision at issue here, does not require the Government to provide articulable facts, does not seek a legal determination, and does not have any external or neutral review process available. Rather, the Government's representation to a service provider that an emergency exists allows the *service provider* to make a voluntary disclosure. The statute does not address the antecedent question of whether the Government's request and subsequent search of the CSLI falls within an exception to the warrant requirement. Moreover, it is not at all clear that an "emergency" within the meaning of § 2702(c)(4) is coterminous with an "exigent circumstance" within the meaning of Fourth Amendment jurisprudence.

The Government cited *Gilliam*, a pre-*Carpenter* case, for the proposition that "emergency circumstances" can justify the warrantless search of prospective CSLI. (Doc. 48) at 8-9. This Court does not agree with that interpretation of *Gilliam* and its application to these facts.

In *Gilliam*, the Second Circuit considered whether tracking the phone of a person who police believed had abducted a minor child and taken her across state lines for sex trafficking showed "an emergency involving danger of . . . serious physical injury to any person." 842 F.3d at 803. The *Gilliam* court reasoned that "involving" "includes a realistic threat of such injury, not just a completed injury." *Id.* That court explained that the statutory issue of whether the circumstances presented to the cell carrier "involved" such danger "and the Fourth Amendment issue turn on whether the circumstances known to law enforcement and presented to [the cell carrier] were within the category of 'exigent circumstances' that permit warrantless searches." *Id.* at 804 (citing *Riley*, 134 S. Ct. at 2487).

The Second Circuit did not hold that the cell carrier's acceptance of law enforcement's representations regarding an alleged emergency authorized the warrantless search. To the contrary, the *Gilliam* court conducted a Fourth Amendment exigent circumstances analysis with

13

respect to *law enforcement's* knowledge and actions prior to making the request. *Id.* at 804. This Court agrees with the Second Circuit that the appropriate question is not whether a cell carrier accepts representations regarding an emergency and voluntarily discloses CSLI. Rather, the controlling question is "whether the circumstances known to law enforcement . . . were within the category of 'exigent circumstances' that permit warrantless searches." *Id.* (citing *Riley*, 134 S. Ct. at 2487).

The Government also relies on *United States v. Takai*, 943 F. Supp. 2d 1315 (D. Utah 2013), a pre-*Carpenter* case, for the proposition that the § 2702(c)(4) generally authorizes the constitutionally-sound warrantless tracking of a phone's prospective CSLI. (Doc. 48) at 8 (discussing *Takai*). However, *Carpenter* and *Gilliam* substantially diminished *Takai*'s interpretation of the SCA. Therefore, this Court does not find *Takai* persuasive here and instead relies on *Carpenter* in this analysis.

Moreover, even if the SCA did apply to this case, there were no ongoing emergency circumstances justifying the request under § 2702(c)(4) after the phone was located eastbound on Highway 82, and officers did not detail or explain the purported emergency circumstances on the request form.

Given Mr. Cherry's report to law enforcement, the time inherent in requesting information from Verizon, and the reasonable belief that Mr. Cherry or his wife could be in danger from Terrell or the unidentified male (who turned out to be Defendant), the Court concludes that officers reasonably believed there was an emergency situation at 11:00 p.m. on June 2, 2019, when the request for cell site location information (CSLI) was made to Verizon. While reasonable minds could differ on the import or meaning of the first ping in Carrizozo, the

Court concludes it was reasonable for officers to believe the emergency with respect to the Cherry family remained ongoing.

Subsequent pings revealed the phone moving south toward Tularosa. As the phone travelled a greater distance from Truth or Consequences, any emergency situation appeared to dissipate. Nonetheless, a reasonable officer receiving location information could determine that the emergency remained ongoing. The Court notes, however, that enough time likely existed to apply for a search warrant to track the phone, *i.e.*, more than two hours, in the event the phone turned back toward Truth or Consequences.

As time progressed, the phone turned east on Highway 82 toward Carlsbad, and further from Truth or Consequences. At this time, the situation relating to Mr. Cherry and Truth or Consequences was no longer emergent. A reasonable officer, under these circumstances, could not believe an ongoing emergency continued to exist. Put another way, the phone was moving in a direction away from the now-ended emergency situation, such that it was not reasonable for a law enforcement officer to believe any purported emergency was ongoing as it related to the Cherry home. During this period, no reasonable officer could believe an ongoing emergency existed with respect to Truth or Consequences.

Lt. Baker testified that the ongoing emergency was "[t]he fact that the vehicle could have turned around and came right back to Truth or Consequences at any time." Tr. at 47:3-5. However, as discussed above, by the time the phone turned east on Highway 82, the emergency had dissipated. At that point, no emergency circumstance supporting the continued warrantless tracking of Defendant's real-time CSLI existed.

Although the Government did not rely on Lt. Baker's belief that Terrell and his companion were armed and dangerous, such an argument would not change the analysis. Here, officers did

not know what vehicle Terrell and Defendant occupied, so no confrontation could have been imminent, and there was no stated imminent risk to law enforcement. Additionally, as the phone traveled along relatively remote highways in the early hours of the morning, Defendant and Terrell—even if armed and dangerous—did not pose an immediate risk to any other person.

For these reasons, the Court concludes the SCA does not apply to this case and is not a basis on which the Government can rely to justify the warrantless search at issue.[10] Even if the SCA did apply, the circumstances of this case did not evince an emergency situation sufficient for the warrantless disclosure of real-time CSLI under § 2702(c)(4) after the phone turned east on Highway 82.

    ii.   *Exigent Circumstances Exception*

Having concluded the SCA does not apply to this case, the Court turns to whether the exigent circumstances exception to the warrant requirement applies here. The Court finds that while exigent circumstances may have supported the request for CSLI and the first several pings, that justification dissipated when the phone was located eastbound on Highway 82. And yet, the warrantless search continued. The Court thus concludes that exigent circumstances did not exist after the phone was located eastbound, moving in the direction away from Truth or Consequences. As a result, the exigent circumstances exception does not apply.

At the outset, it is not clear in the caselaw or the Government's argument where or to what extent an "emergency situation" within the meaning of the SCA overlaps with "exigent circumstances" within the meaning of the Fourth Amendment. Nevertheless, the Court analyzes the search under the exigent circumstances rubric.

---

[10] In his Reply, Defendant challenges the constitutionality of the SCA as applied to him in this case, if the Court determines the SCA applies. (Doc. 49) at 4. Because the Court concludes the SCA does not apply to Defendant, the Court need not consider Defendant's as-applied challenge.

"In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley*, 573 U.S. at 382 (citing *Kentucky v. King*, 563 U.S. ---, 131 S. Ct. 1849, 1856-57 (2011)). "The exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant." *Doe v. Woodard*, 912 F.3d 1278, 1290 n.14 (10th Cir. 2019) (quoting *Birchfield v. North Dakota*, --- U.S. ---, 136 S. Ct. 2160, 2173 (2016)). "The existence of exigent circumstances is a mixed question of law and fact." *United States v. Martinez*, 643 F.3d 1292, 1296 (10th Cir. 2011) (internal quotation omitted). "The government bears the burden of proving that exigent circumstances rendered a warrantless search reasonable." *Id.*

An exigency may arise "when the circumstances pose[] a significant risk to the safety of a police officer or a third party." *United States v. Najar*, 451 F.3d 710, 717 (10th Cir. 2006)). To apply, "the exigencies of the situation [must] make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Exigencies may arise from threats to a person's physical safety, the likely destruction of evidence, and hot pursuit of a fleeing suspect.[11] *United States v. Mongold*, 528 Fed. Appx. 944, 948 (10th Cir. 2013) (citing *King*, 563 U.S. at 460).

When an exigency involves a "risk of personal danger," courts in this Circuit ask two questions: first, whether "the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others," and second, whether "the

---

[11] "Hot pursuit occurs when an officer is in 'immediate or continuous pursuit' of a suspect from the scene of a crime." *United States v. Jackson*, 139 Fed. Appx. 83, 86 (10th Cir. 2005) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984)). Hot pursuit does not apply in this case, despite any argument that law enforcement intended to track a fugitive, several days after a crime had allegedly been committed.

manner and scope of the search is reasonable." *Najar*, 451 F.3d at 718.  If the answer to either question is "no," the exigent circumstances exception does not apply.  *Id.*

As noted above, by the time the phone was located on Highway 82 and was tracked for an additional 90 minutes, the officers in this case did not have an objectively reasonable basis to believe there was an immediate need to protect the lives or safety of themselves or others. Officers had no reason to believe Terrell would show up at the Cherry residence after this point—when he was already well beyond his anticipated arrival window—and had no reason to believe the vehicle would turn back toward Truth or Consequences when the pings indicated the vehicle was traveling in the opposite direction.  No evidence was presented that officers follow-up with Mr. Cherry at any point after approximately 10:10 p.m., or to intercept Terrell and his companion before a confrontation could occur.  The evidence suggests the officers had sufficient time to apply for a warrant during the intervening time between the call from Mr. Cherry at 9:15 p.m. and the ultimate stop of the vehicle around 2:30 a.m.

While the Court is persuaded that an exigent circumstance justified tracking Defendant's real-time CSLI for an hour or so, from Carrizozo until the vehicle turned east toward Cloudcroft, any exigency ended when the vehicle turned east.  For these reasons, the Court concludes no exigent circumstance existed and if one did, the scope of the search was not reasonable under the circumstances.  The evidence includes references to the individuals being "armed and dangerous" and that Terrell was wanted in connection to a homicide investigation.  However, the testimony elicited indicates the request for CSLI was for the emergency surrounding the report from Mr. Cherry.  There is no legal support for an argument that being wanted, or a pending arrest warrant, without additional facts, constitutes an "emergency" or other circumstance to get

around the warrant requirement with respect to searching CSLI.  For these reasons, the Court

concludes the exigent circumstances exception does not apply.

In reaching these conclusions, the Court notes no evidence that law enforcement officials

applied for a search warrant, despite the roughly five hours between the first contact with Mr.

Cherry and pulling over Defendant in Hope, New Mexico.  While the Court does not pass

judgment on whether a search warrant would have been granted, officers certainly had enough

information available to apply for a search warrant.  The familiar standard for issuance of a

search warrant is probable cause, but the standard for a warrantless search requires—

appropriately—something more.  Officers lacked the additional element of exigence in this case.

Having determined that the exigent circumstances exception does not apply, and seeing

no further argument under the Fourth Amendment to justify the search of Defendant's real-time

CSLI, the Court concludes the search of Defendant's real-time CSLI violated Defendant's Fourth

Amendment right to be free from unreasonable searches.

iii.    *Good Faith Exception to the Exclusionary Rule*

When a search violates the Defendant's Fourth Amendment right, the standard remedy is

exclusion of the evidence from the search.  However, in *United States v. Leon*, 468 U.S. 897, 920

(1984), the Supreme Court adopted a good-faith exception to the application of the exclusionary

rule and specifically applied that exception where "an officer acting with objective good faith has

obtained a search warrant from a judge or magistrate and acted within its scope," even though

the search warrant was later deemed to be invalid.  *See also United States v. Nelson*, 88 F.3d 885,

891-92 (10th Cir. 2017) (stating that "suppression [is not an] appropriate remedy when [an]

officer relies in good-faith on a third-party's mistake" (internal citation omitted)).  The *Leon*

Court reasoned that "where the officer's conduct is objectively reasonable, 'excluding the

evidence will not further the ends of the exclusionary rule in any appreciable way . . . .'" 468

U.S. at 920 (quoting *Stone v. Powell*, 428 U.S. 465, 539-40 (1976) (White, J., dissenting)).  The

Court further "emphasize[d] that the standard of reasonableness [adopted] is an objective one"

that does not "turn on the subjective good faith of individual officers." *Id.* at 919 n.20.

Three years later, the Court extended *Leon* in *Illinois v. Krull* when it concluded that

suppression of "evidence obtained by an officer acting in objectively reasonable reliance on a

statute would have as little deterrent effect on the officer's actions as would the exclusion of

evidence when an officer acts in objectively reasonable reliance on a warrant."  480 U.S. 340,

349 (1987).

The Government argues that *Krull* applies to this case, and contends officers reasonably

relied on Verizon's voluntary disclosure pursuant to § 2702(c)(4) as a constitutional basis for the

real-time CSLI search.  In support, the Government cites *United States v. Clarkson*, 551 F.3d

1196, 1204 (10th Cir. 2009), for the proposition that *Krull* extended *Leon* to include a good faith

exception for reasonable reliance on a statute's regulatory scheme authorizing warrantless

searches, even where the regulatory scheme is later found to be unconstitutional.  (Doc. 48) at

13.  The Government then cites *United States v. Graham*, 846 F. Supp. 2d 384, 406 (D. Md.

2012), for the proposition that reliance on § 2702 is reasonable and suppression is, therefore,

inappropriate.  (Doc. 48) at 13.  The Court here is not persuaded.

In the sentence citing *Krull*, the Tenth Circuit stated that "the [Supreme] Court was

willing to apply good-faith exception only where a neutral third party, not a law enforcement

member, was responsible for the error leading to the Fourth Amendment violation."  551 F.3d at

1204 (citing *Krull*, 480 U.S. at 349-50).  Here, Verizon is not a "neutral third party" like the

magistrate or other court officer in *Leon*, a legislature in *Krull*, or even court clerical staff like

20

*Arizona v. Evans*, 514 U.S. 1, 15 (1995).  Verizon did not make an independent judgment on the merits or constitutionality of the requested search.  Instead, Verizon accepted a single box checked on a single form, based solely on the unsupported (and, as discussed above, unreasonable) representations of an individual officer.

And *Graham* is a pre-*Carpenter* case considering acquisition of CSLI pursuant to court orders issued by two separate magistrate judges under § 2703 of the SCA.  846 F. Supp. 2d at 396, 405-06.  That court expressly noted that "the officers involved relied in good faith on the [SCA] *and the Orders issued by Magistrate Judges* . . . ." *Id.* at 405 (emphasis added).  This case does not involve presentation of law enforcement's theory to *any* neutral arbiter and does not involve reliance on any court order.  *Graham* is unavailing.

This case would need to fit within *Krull* for the Court to conclude the good faith exception applies.  It does not.  In *Krull*, officers reasonably relied on a statutory scheme.  As discussed above, no such reasonable reliance exists in this case.  Here, *Carpenter* made clear that law enforcement's access of CSLI constitutes a search, there is no search warrant, and no exigent circumstances existed for the 90 or so minutes of the CSLI search following the eastward turn onto Highway 82.[12]  Accordingly, the good faith exception does not apply and all evidence flowing from the unconstitutional search is subject to exclusion.

B. *Fruit of the Poisonous Tree*

---

[12] The Court does not suggest that officers in this case engaged in intentional or malicious misfeasance.  The Court found the witnesses credible, including their testimony as to honestly held beliefs that the situation remained emergent.  As noted above, however, those beliefs were not objectively reasonable.

The Court does not reach Defendant's argument with respect to the vehicle stop because the Court concludes the vehicle stop and Defendant's detention must be suppressed as fruit of the poisonous tree.

"The exclusionary rule generally applied in Fourth Amendment cases requires courts to suppress not only evidence obtained as a 'direct result of an illegal search or seizure' but also 'evidence later discovered and found to be derivative of an illegality.'" *United States v. Suggs*, 998 F.3d 1125, 1141-42 (10th Cir. 2021) (quoting *Utah v. Strieff*, --- U.S. ---, 136 S. Ct. 2056, 2061 (2016)). "To satisfy the threshold causation requirement, a defendant need only show that 'the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct.'" *Id.* at 1142 (quoting *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000)).

"Evidence will not be suppressed as fruit of the poisonous tree unless an unlawful search is *at least* the but-for cause of its discovery." *United States v. Chavira*, 467 F.3d 1286, 1291 (10th Cir. 2006) (emphasis in original) (citing *Hudson v. Michigan*, 547 U.S. 586 (2006)). "The Government can establish that a particular item of evidence has been purged of the primary taint by demonstrating that the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." *United States v. Olivares-Rangel*, 458 F.3d 1104, 1109 (10th Cir. 2006). That is, the Government "may avoid suppression by breaking the causal chain." *Suggs*, 998 F.3d at 1142.

Here, but for the unconstitutional search of Defendant's real-time CSLI, officers would not have identified Defendant's vehicle on the road near Hope, New Mexico, much less pulled it over. Had officers not identified Defendant's vehicle and pulled it over, officers would not have

22

detained Defendant for any period of time. Had officers not identified Defendant's vehicle and pulled him over, they would not and could not have obtained a warrant to search the vehicle, and would not have found the firearm at issue.

No evidence was presented to break the causal chain between the unconstitutional conduct and discovery of the gun. Nor has the Government argued that Defendant's vehicle would have been discovered even without the constitutional violation. The Government generally invokes the "attenuation" doctrine, which would allow it to avoid suppression by showing that "the connection between unconstitutional police conduct and the evidence is remote," *Strieff*, 136 S. Ct. at 2061, by a strict reading of Defendant's Motion. Defendant moved to suppress "multiple searches and seizures" flowing from the unconstitutional CSLI search. (Doc. 41) at 6. While it is true that Defendant could have been more precise in describing the relief requested, he clearly seeks suppression of the firearm discovered during the search of his vehicle.

In addition, no evidence was presented of an independent source—that is, "a source wholly separate" from the initial constitutional intrusion—for the discovery and seizure of the evidence. *United States v. Shrum*, 908 F.3d 1219, 1235 (10th Cir. 2018). Although officers obtained a warrant to search Defendant's vehicle, they used information obtained during the illegal search of Defendant's CSLI to secure the warrant. The Government has not explained how, under these circumstances, the warrant to search the vehicle could serve as an independent source that purged the evidence of the primary taint arising from the unlawful search. *See Segura v. United States*, 468 U.S. 796, 814 (1984) (applying independent-source doctrine because "[n]one of the information on which the warrant was secured was derived from or related in any way to the initial [unlawful search]").

For these reasons, the Court concludes all evidence derived from the unconstitutional search of Defendant's real-time CSLI must be suppressed as fruit of the poisonous tree.

IV.  *Conclusion*

For the reasons explained herein, the Court grants Defendant's Motion to Suppress (Doc. 41).

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE

24